UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

MICHAEL HAGEMAN,

        Petitioner,

        v.                                Case No. 03-C-0223

RICHARD RAEMISCH,

        Respondent.

---

DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DISMISSING CASE

Michael Hageman filed a petition under 28 U.S.C. § 2254, asserting that his state court conviction and sentence were imposed in violation of the Constitution. Hageman was convicted in Milwaukee County Circuit Court of manufacturing marijuana (Case No. 2000CF001276) and disorderly conduct (Case No. 2000CF001509).[1] (Answer ¶ 1, Ex. A.) Although charged separately, the cases were joined for the plea hearing and sentencing. (*See* Answer Exs. A, D.) Hageman pled no contest to the felony drug charge and entered an *Alford*[2] plea regarding the disorderly conduct charge. (Answer Ex. A.) He was sentenced to three years of imprisonment and six years of extended supervision for the felony drug charge and ninety days in jail for the misdemeanor disorderly conduct charge. (Answer Ex. A.)

---

[1] In the second case Hageman was initially charged with bail jumping and solicitation to commit a felony; however, the charge was amended to disorderly conduct pursuant to a plea agreement. (*See* Suppl. Exs. (Doc. 32) Ex. O at 74:7-12; *see also* Answer Ex. D at 5.)

[2] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

In his petition, Hageman asserted numerous grounds for relief. Three supplements filed subsequent to the petition attempted to add several grounds. If all of the supplements were considered, Hageman asserted fifty-five grounds for relief. The court rejected two of the supplements in its screening order under Rule 4 of the Rules Governing § 2254 Cases, leaving forty-eight grounds for relief. The court then dismissed most of Hageman's claims, leaving ground 12, part of ground 13, grounds 16, 17, 20, 33, and part of ground 37. Thereafter, the case was stayed until completion of proceedings in the Wisconsin Court of Appeals and Supreme Court of Wisconsin under *State v. Knight*, 168 Wis. 2d 509, 484 N.W.2d 540 (1992), or until dismissal by Hageman of his claims of ineffective assistance of appellate counsel. Later, Hageman dropped the unexhausted grounds (ground 33 and the remainder of ground 37) and the case was reopened. Briefing on the remaining claims is complete and the case is ready for decision.

## AMENDMENT OF THE CAPTION

In the Brief in Opposition to Petition for Writ of Habeas Corpus, respondent indicated that Quala Champagne had replaced Richard Raemisch as the Administrator of the Wisconsin Department of Corrections Division of Community Corrections and asked that the caption be amended accordingly. Hence Champagne will be substituted for Raemisch as respondent.

## STANDARD OF REVIEW

Federal courts may grant habeas relief to petitioners in custody pursuant to the judgment of a state court when the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). However, no

2

habeas petition by a person in state custody may be granted as to any claim adjudicated on the merits in a state court proceeding unless the adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

A state court decision is "contrary to" federal law if the state court's determination differs from established law as outlined in U.S. Supreme Court cases or is decided differently than a U.S. Supreme Court case on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court's application of federal law will be considered unreasonable if it identifies the controlling U.S. Supreme Court legal principle correctly but then applies it to the facts of the case in an unreasonable manner. *Id.* at 407-09, 413. A federal court analyzing the reasonableness of a state court decision "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. An unreasonable application is different from an incorrect one. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). A federal court cannot substitute its independent judgment as to the correct outcome. *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000).

If a petitioner has failed to develop the factual basis of a claim in state court, this court cannot hold an evidentiary hearing unless the petitioner shows that (a) his claim relies on a new rule of constitutional law made retroactive to his case or "a factual predicate that could not have been previously discovered through the exercise of due diligence" and

(b) the facts underlying his claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found him guilty of the underlying offense. 28 U.S.C. § 2254(e)(2).

## DISCUSSION

Hageman asks the court to grant his habeas petition on the basis of the remaining grounds and others. In the grounds that survived screening he contends that he was denied effective assistance of counsel for three reasons (grounds 12, 16, & 17), the trial court violated his right to self-representation (ground 13), and the trial court deprived him of due process by sentencing him on false information (ground 20). Respondent admits that Hageman exhausted at the state level all of the issues that this court allowed him to pursue in its screening order[3] and that the petition is not time-barred or a second or successive petition. (Answer ¶¶ 2, 6-8.)

In addition to the grounds for relief allowed to proceed, Hageman attempts to reinstate his charges that the state court denied him counsel at his bail hearing and preliminary hearing. (Petr.'s Brief 1, 5.) However, this court has already dismissed those claims. (*See* Order Screening Pet. at 9-10 (dismissing factual allegations in grounds 22 and 25 per the guilty plea bar).)

Also, Hageman's memorandum urges the court to review the state court's jurisdiction regarding bail, arguing, inter alia, that a particular judge had no jurisdiction to increase his bail. (See Pet'r's Br. at 6, 8; see also Pet'r's Reply Br. at 1.)  The court

---

[3]Hageman's appellate counsel filed a no-merit report and Hageman filed a lengthy response. On May 14, 2002, the Wisconsin Court of Appeals issued its decision finding no meritorious issues. (Answer Exs. B, C, D.)

4

declines the invitation, as this issue is barred by defendant's guilty pleas. (*See, e.g.*, Order Screening Pet. at 7-10 (noting that ground 27 disputing Circuit Court's bail jurisdiction is barred).) While Hageman does not dispute that he could be charged and convicted in Milwaukee County Circuit Court, he argues that the judge in the drug case could not address his bail in the non-drug case. Regardless, Hageman's challenges to bail were waived by his no contest and *Alford* pleas.

Hageman attempts to add various other arguments. To the extent any of these new arguments have not been addressed in this opinion, they are rejected. Further, to the extent Hageman raises new arguments in his reply brief, those are rejected even if not addressed herein.

A. Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court articulated a two-prong test for remediable ineffective assistance of counsel claims. *See* 466 U.S. 668, 687 (1984). *Strickland*'s test requires a showing that counsel's performance was deficient, i.e., below the objective reasonableness standard, and that such performance caused petitioner material prejudice. *See id.* Judicial scrutiny is "highly deferential" and the court strongly presumes that counsel's conduct was reasonable. *See id.* at 689. With respect to the performance element, a petitioner must persuade the court that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. Petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. *Strickland* applies to claims of counsel

5

failing to properly inform a defendant of the legal ramifications of his guilty pleas, such as the waiver of rights and direct consequences. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

The state courts did not pass on Hageman's *Strickland* claims. The attorney who filed the no-merit report did not phrase his suggested arguments as ineffective assistance of counsel claims, and the Wisconsin Court of Appeals did not address any of the ineffective assistance of counsel contentions Hageman may have raised in his numerous filings with that court. Instead, the no-merit report and Wisconsin Court of Appeals decision addressed some of the matters underlying the present ineffective assistance of counsel claims. For instance, the no-merit report and state court addressed whether Hageman's pleas were knowing, intelligent, and voluntary, while here Hageman's claim that his pleas were not knowing, intelligent and voluntary, is based on an argument that his attorney's advice regarding the plea was incorrect. Nevertheless, this court need not determine whether de novo review or deferential review of issues adjudicated on the merits applies, as even under de novo review Hageman's arguments fail.

Hageman submits that his Sixth Amendment right to effective assistance of counsel was violated on multiple grounds, three of which survived initial review under Rule 4 of the Rules Governing § 2254 Cases. First, he claims that he did not willingly, voluntarily, and knowingly enter into the plea agreement because his trial attorney, Craig Mastantuono, misinformed him. (Pet. at 5(b), Ex. Mem. of Law Ground 12; Pet'r's Br. at 5.) Hageman phrases this ground for relief (ground 12) as follows:

> My attorney, Craig Mastantuono, assured me that I could appeal ALL my issues. He refused to bring up these issues to the court, and the court refused to hear these issues from me contrary to the Wisconsin constitution. My civil, human, and

6

> constitutional rights were being violated by the Milw. County Jail (hereafter refered [sic] to as the MCJ). My building was being burglarized, vandalized, and stolden [sic] from by the "alleged victim", Sandi Fankowski, and a[n] "evil" relative. Atty Mastantuono said the only way to stop these burglary's [sic], vandalism, and thefts was to plead to the charges, because I should get time served or probation, then I could stop that criminal activity because I would be out of the MCJ. The pleas were forced, and non-knowingly entered.

(Pet. at 5(b).) In other words, as to Mastantuono's advice, Hageman claims that Mastantuono incorrectly advised him (1) that he could appeal all issues he wanted and (2) that the only way to stop burglaries of his property was to plead guilty to the charges.

The transcript of Hageman's plea hearing reveals that the Circuit Court judge conducted an extensive plea colloquy. (Suppl. Exs. (Doc. #32) Ex. N at 25:18-39:9.) Further, she suspended proceedings to afford Hageman additional time to confer with his attorney on his no contest and *Alford* pleas. (*Id.* at 17:19-18:22.) Hageman confirmed at the plea hearing that his attorney duly advised him of the effects of his plea. (*Id.* at 34:25-35:12.) He admitted he was entering his plea freely, voluntarily, and intelligently. (*Id.* at 29:15-17.) Moreover, Hageman said he understood he was giving up his right to see and cross-examine witnesses at trial and to have his case decided by a jury. (*Id.* at 31:14-33:1.)

Notwithstanding these admissions at the plea hearing, Hageman now contends that "he wanted a full trial, with all the evidence shown" and that his attorney failed to explain that on accepting the plea agreement he would be waiving certain rights and issues on appeal.[4] (Pet'r's Br. 4, 5 ("Atty Mastantouno assured me repeatedly that I

---

[4] Wisconsin case law treats a guilty plea, no contest plea, and *Alford* plea as similar in effect, inasmuch as any of these pleas waive all nonjurisdictional defects and defenses. *State v. Kelty*, 2006 WI 101, ¶ 18, 294 Wis. 2d 62, ¶ 18.

7

could appeal all my issues after I cop a plea.").) But Hageman has not produced any evidence to substantiate these charges or to refute his admissions at the plea hearing. Nor has he requested or satisfied the high standard required to have an evidentiary hearing in this court. *See* 28 U.S.C. § 2254(e)(2).

Any statement by Mastantuono that Hageman would get out of custody earlier with a plea than without one was likely accurate. A statement that Hageman would be able to appeal *all* issues would have been inaccurate. As discussed in this court's Rule 4 screening order, review of many issues is barred by Hageman's no contest and *Alford* pleas. However, Hageman presents no evidence as to what Mastantuono stated. He did not have a hearing in state court on the matter, and this court is left to speculate. Thus, the court finds Hageman has not established that his trial attorney's counsel respecting the plea hearing fell below *Strickland*'s objective performance standard.

Moreover, Hageman has failed to establish prejudice. Nothing in the record supports the contention that he pled guilty because of these two representations by Mastantuono. As noted by the parties and trial court at sentencing, four felonies were reduced to one felony and one misdemeanor as a result of the plea deal. (*See, e.g.*, Suppl. Exs. Ex N at 2:2-3:9.) It is significant, and contrary to the instant claim, that Hageman stated at the plea hearing that he wanted to take advantage of the State's offer to resolve the case. (*Id.* at 21:4-7, 30:25-31:3.)

In ground 17 Hageman maintains that his attorney neglected to explain the direct consequences of entering his pleas, specifically that he would no longer be able to run in an aldermanic election due to his felony conviction. (Pet. at 5(d) (unnumbered);

8

Pet'r's Br. at 5-6.) He alleges that during the pretrial proceedings he was in the middle of an aldermanic race and counsel failed to tell him he could not run for office or run a recall election once convicted. (Pet. at 5(d) (unnumbered).) In his initial brief Hageman states that he "would not have copped a plea if [he] knew that [he] could not run again, or run a recall election." (Pet'r's Br. at 6.)

By extension, the Wisconsin Court of Appeals' discussion of whether Hageman knowingly and voluntarily entered his pleas and whether the *trial court* advised Hageman of the consequence of his pleas addresses the claim that *counsel* was ineffective by failing to advise Hageman that a felony conviction would prevent him from seeking public office. But the difference is not material; even under a de novo standard, Hageman again loses.

Counsel is constitutionally required to apprise a criminal defendant of the "direct consequences" of his guilty plea. *See Brady v. United States*, 397 U.S. 742, 755 (1970); *see also Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). However, the Supreme Court has not "delimited comprehensively the particular consequences that are direct or collateral for purposes of evaluating the voluntariness of a guilty plea." *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008). The Seventh Circuit to date has recognized only the potential length of incarceration as lying within *Brady*'s "direct consequences." *Id.* This Circuit has held that "[w]hile a defendant need not know '*all* the consequences, such as loss of the right to vote or of the right to own a gun, or the effect on future sentences,' he must 'certainly [know] the maximum punishment that he faces if he is convicted in the case at hand.'" *Dalton v. Battaglia*, 402 F.3d 729, 733 (7th Cir. 2005) (quoting *Trueblood v.*

9

*Davis*, 301 F.3d 784, 786 (7th Cir. 2002)) (alteration in original). The right to run in a city election is akin to the right to vote, as both are civic privileges. Thus, it follows that failure to warn a defendant that he could no longer seek public office is not failure to warn of a "direct consequence" of a guilty plea under *Brady*'s jurisprudence.[5] Accordingly, as counsel had no duty to inform Hageman of his inability to run for office, he was not ineffective for his failure to do so.

Lastly, Hageman claims in ground 16 that his trial attorney did not keep assorted promises to him and failed to employ reasonable trial strategy. (Pet. at 5(d) (unnumbered); Pet'r's Reply Br. at 5-9.) As stated by Hageman, he

> told atty [sic] Mastantuono how he wanted to be defended, and on what grounds. Atty Mastantuono refused to follow all instructions given by petitioner. He did say he wanted to put the motions in his own words, but he refused to do so. All atty Mastantuono would say, after he got the money was "Take a plea". Atty Mastantuono refused to use all the evidence at the Franks/Mann motion. I told him and wrote him a 19 page document that showed that the prosecution lied about the IR scan, and Byal's testimony. Atty Mastantuono fought me the whole way through the pretrial, and refused to have me there at all the hearings, as I requested. He did not negotiate a plea deal, he only accepted what Mr. Stingl said, and demanded that I not get sentence credit. I didn't even have a warm body standing next to me.
> I was effectively abandoned by counsel, a PENSION [sic] & CRONIC violation.

(Pet. at 5(d) (unnumbered).)

---

[5] In reaching this holding, the court notes that Wisconsin courts employ *Brady*'s "direct consequences" standard in evaluating plea voluntariness, and have held that a consequence is direct only if it punishes the defendant. *See State v. Bollig*, 2000 WI 6, ¶ 16, 232 Wis. 2d 561, ¶ 16. Further, under Wisconsin case law, forfeiture of the right to run in a state election, which is found in Wis. Const. art XIII, § 3, is not punishment. *See Swan v. LaFollette*, 231 Wis. 2d 633, 639-40, 605 N.W.2d 640, 643-44 (Ct. App. 1999). The state courts are entitled to interpret state law as they see fit.

For support, Hageman asks the court to consider the record. Upon doing so the court finds insufficient evidence to corroborate Hageman's assertions. The record shows that Mastantuono was an active advocate, as he obtained discovery from the state, sought to suppress evidence, and effected a plea agreement to reduce a potentially worse sentence. Given that Hageman has not sufficiently proven his attorney's performance was deficient by *Strickland* standards and the strong presumption of reasonableness in counsel's conduct, the court finds Hageman's right to effective assistance of counsel was not violated. Further, Hageman fails to show any prejudice, as nothing indicates that he would not have pled no contest or entered an *Alford* plea in any event. For these reasons, Hageman's three claims of ineffective assistance of counsel are rejected.

Interestingly, at times, Hageman contends he is not asserting ineffective assistance of counsel claims under *Strickland*, but rather claims of a complete denial of counsel under *United States v. Cronic*, 466 U.S. 648 (1984), and *Penson v. Ohio*, 488 U.S. 75 (1988). *Cronic* is a narrow exception to *Strickland*. *McDowell v. Kingston*, 497 F.3d 757, 762 (7th Cir. 2007).

Decided the same day as *Strickland*, *Cronic* held that "in circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," prejudice is presumed. *Cronic*, 466 U.S. at 658; *McDowell*, 497 F.3d at 761. Prejudice is presumed in three circumstances:

> (1) where there is a "complete denial of counsel" or denial at a "critical stage" of the litigation; (2) where counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) where "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a

> fully competent one, could provide effective assistance is [very] small."

*McDowell*, 497 F.3d at 761-62 (quoting *Cronic*, 466 U.S. at 659-60). *Penson* confirmed that even on appeal a complete denial of counsel does not require a showing of prejudice and cannot be treated as harmless error. *See* 488 U.S. at 88.

The first category is limited to instances where counsel is *physically* absent, sleeping or unconscious. *McDowell*, 497 F.3d at 762 & n.2. Hageman does not contend that his counsel was physically absent at the time of plea negotiations or the plea hearing, but rather his representation was such that it was *as if* he was absent.[6] Thus, the first category does not apply; arguments concerning constructive denial of counsel are better considered under the second category, *id.* at 762 n.2.

The second category requires a complete failure to oppose the prosecution throughout the criminal proceeding rather than a failure to do so at specific points. *Id.* at 763. Moreover, failures at specific points do not trigger a presumption of prejudice. *Id.* Here, the record shows that counsel defended Hageman at many points during the proceedings, although Hageman may now disagree with how counsel handled his defense. Hageman even acknowledges that counsel "ran a 'Franks/Mann hearing" in the trial court. (Pet'r's Br. at 1.) Additionally, he cites counsel's failures at specific points rather than an entire failure. As to the third category, in which *no* attorney could provide effective assistance, Hageman merely complains of *Mastantuono's* representation.

B. Right to Self-Representation

---

[6] Hageman does assert that Mastantuono was physically absent at his preliminary hearing, but any issue with that stage of the proceedings was waived by Hageman's no contest and *Alford* pleas.

Hageman's 13th ground for habeas relief is that the state court trial judge did not allow him "to petition the court and have my issues and motions brought before the court." (Pet. at 5(b).) He argues that his right to defend himself was violated. (Pet'r's Br. at 6-10.) Inasmuch as the state acknowledges that Hageman raised this claim and the state appellate courts did not address it on the merits, review by this court is de novo.

The right to self-representation is guaranteed to criminal defendants in state court proceedings per the Sixth and Fourteenth Amendments. *Faretta v. California*, 422 U.S. 806, 820 (1975). But the scope of this liberty does not include a right to "hybrid" representation, which would allow a defendant to proceed pro se and with counsel. *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984).[7] Moreover, a defendant

> does not have a constitutional right to choreograph special appearances by counsel. Once a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced.

*Id.*

Hageman attacks case law that rejects "hybrid counsel":

> The whole concept of "Hybrid Counsel" is a hoax injected by the modern coven [of lawyers] so that they can act like the gods they pretend to be. Federal case law demands that the accused has the primary control of their defence, and counsel is a servant, not the master of the accused. The accused has the Constitutional right to be heard, both Federally, and State wise.

---

[7] Similarly, the Wisconsin Supreme Court has not recognized a "hybrid" right to counsel and self-representation. *See State v. Debra A.E.*, 188 Wis. 2d 111, 523 N.W.2d 727, 736–37 (1994).

13

(Pet'r's Reply Br. at 4.) Despite these attacks, Hageman's argument is unpersuasive in light of the precedent this court follows.

As Hageman retained the services of an attorney for trial and could have fired him, this court finds the claim that the state court prevented him from representing himself incredible. If Hageman was unsatisfied with his counsel's advocacy, it was his prerogative to notify the trial judge that he wished to proceed pro se. Yet Hageman chose to retain his attorney through sentencing. (*See, e.g.,* Suppl. Exs. Ex. O at 63:1-76:22.) Hageman points to nothing in the record indicating that he asked the trial court to allow him to represent himself, and the trial court was not required to allow hybrid representation. Thus, this court concludes that there was no violation of Hageman's right to self-representation.

C.  Due Process at Sentencing

Lastly, the court finds that Hageman was not deprived of procedural due process at sentencing. Hageman contends he was sentenced on false information, in particular that the number of marijuana plants found in his possession was grossly inaccurate. (Pet. at 5(e) (unnumbered); Pet'r's Reply Br. at 10-11.) Hageman alleges that the prosecutor "knowingly told the court an incorrect plant count" and that "[m]ost of the plant count was plant debris, plant parts (clone attempts) that never lived. Most were years old. A person can not count every leaf on the floor as a plant." (Pet. at 5(e) (unnumbered).) In affirming Hageman's conviction the Wisconsin Court of Appeals addressed his sentencing argument regarding decriminalizing marijuana, particularly for medical usage. Regardless, whether de novo or deferential review applies, this claim fails.

Although the Fourteenth Amendment provides convicted criminal defendants the right to be sentenced on accurate information, *United States v. Tucker*, 404 U.S. 443, 447 (1972), the petitioner seeking habeas relief "must establish that the sentencing court relied on critical inaccurate information when announcing the sentence," *Simonson v. Hepp*, 549 F.3d 1101, 1107 (7th Cir. 2008).

Hageman has not sufficiently established that the plant count used by the trial court in sentencing was critically inaccurate. As stated above, Hageman asserts that the state errantly counted dead plants and every leaf on the floor as a plant. (Pet. at 5(e) (unnumbered).) He maintains that this misinformation, which was set forth in the criminal complaint, should not have been used in sentencing. But Hageman agreed to adopt the criminal complaint as the factual basis of his plea. (Suppl. Exs. Ex. N at 5:13-14, 35:18–23.) The complaint charged that agents seized from Hageman's basement 237 live marijuana plants and 270 dead marijuana plants. (Suppl. Exs. Ex. A at 2, 4.) Attachments to the complaint list as seized 237 separate marijuana plants with root systems. Had Hageman found the factual allegations of the complaint to be inaccurate on material points, he should not have adopted as fact those allegations, thereby waiving his right to dispute the evidence at sentencing. Because he accepted the facts as set forth in the criminal complaint, the factual issue regarding the numerical accuracy of marijuana plants seized upon his arrest must be resolved against him.

Further, Hageman's distinction between a marijuana "plant" and "seedling" (Pet'r's Reply Br. at 10-11) is deemed not critical under *Simonson*'s standard. Assuming the 270 marijuana seedlings found in his possession were discounted, he nevertheless had

15

approximately 237 live plants upon arrest. (Suppl. Exs. Ex. A at 4, Ex. O at 64:18-25.) Pursuant to Wisconsin statutes, Hageman could have been sentenced up to fifteen years for growing a minimum of fifty marijuana plants. See Wis. Stat. §§ 961.14(4)(t), 961.41(1)(h). (See also Suppl. Exs. Ex. A.) However, he received three years imprisonment—a fifth of the time he could have received despite having a quantity of marijuana nearly five times over the statutory minimum that would support a greater sentence. Even if the marijuana seedlings were ignored at sentencing, Hageman still possessed more than enough live plants to be sentenced for a significantly longer time period. For these reasons, the court finds no violation of Hageman's due process rights in the state court's sentencing, whether under de novo or deferential review.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability at this time.

An unsuccessful habeas petitioner has no right to appeal the denial of his petition. *Miller-El v. Cockrell*, 537 U.S. 322, 327, 335 (2003). Before a habeas petitioner may take an appeal to the Seventh Circuit, he must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b); *Miller-El*, 537 U.S. at 335-36.

The certificate of appealability issues only if the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies the standard for a "substantial showing" by demonstrating that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement

to proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (stating the standard as whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983))).

The certificate of appealability determination is not a second assessment of the merits. *See Miller-El*, 537 U.S. at 327, 336. Instead, the determination requires only a threshold inquiry into the debatability of the district court's decision — "an overview of the claims in the habeas petition and a general assessment of their merits." *Id.* at 336. The petitioner does not need to demonstrate that the appeal will succeed. *Id.* at 337. A claim may be debatable even though every jurist, after full consideration of the merits of the case, would decide against the petitioner. *Id.* at 338; *see also Davis v. Borgen*, 349 F.3d 1027, 1028 (7th Cir. 2003) ("[C]ertificates properly issue in many cases in which the prisoner will fail on full merits review."). Further, at the certificate of appealability stage, the court need not definitively determine how the statutory clear and convincing evidence and unreasonableness standards apply, as such a determination delves into the substance of the appeal itself. *Miller-El*, 537 at 342. "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.*

Where a district court has rejected a petitioner's constitutional claims on the merits, "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.

17

If the court issues a certificate of appealability it must indicate on which specific issue or issues the petitioner has satisfied the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *Davis*, 349 F.3d at 1028, 1029. If the court denies the request for a certificate of appealability, it must state its reasons. Fed. R. App. P. 22(b)(1).

This court finds that reasonable jurists could debate two of the three ineffective assistance of counsel claims: trial counsel's alleged misrepresentations at the time of Hageman's pleas (that Hageman could appeal all of his issues or should plead to stop burglaries of his property) and trial counsel's alleged failure to inform Hageman of the effect of his pleas or conviction on his aldermanic race. Reasonable jurists could discuss, for instance, whether an attorney's representation that a defendant could still appeal issues that are barred by a guilty plea is deficient conduct and whether an attorney's failure to address the effect on the ability to run for office is required when it is clear that the defendant is in the midst of running for office (rather than contemplating it at a future date). Further, this court finds that Hageman's claim regarding self-representation, or more specifically, hybrid representation could be debated by reasonable jurists.

The court declines to issue any certificate of appealability as to Hageman's third ineffective assistance of counsel claim (that counsel effectively abandoned him and failed to follow his directions) and the claim of a violation of due process and misrepresentation at sentencing. Reasonable jurists would not disagree or find debatable that *Cronic* and *Penson* do not apply in this case and that Hageman's counsel did not have to follow each of Hageman's suggestions. Nor would reasonable jurists disagree or find debatable that Hageman's last ground for relief addressed above fails on the facts.

18

Further, the court declines to issue any certificate of appealability as to any of the myriad other arguments Hageman has raised in his petition and briefs.

## CONCLUSION

After review of the record, the court finds that none of Hageman's constitutional rights were violated as alleged. Therefore,

IT IS ORDERED that the case caption is amended and Quala Champagne is substituted for Richard Raemisch.

IT IS FURTHER ORDERED that the petition for habeas relief is denied and this case is dismissed.

IT IS FURTHER ORDERED that a certificate of appealability is issued as to the ineffective assistance of counsel claims based on trial counsel's alleged misrepresentations at the time of Hageman's pleas and failure to inform Hageman of the effect of his pleas or conviction on his aldermanic race and as to the claim regarding self- or hybrid-representation. As to all other claims or arguments a certificate of appealability is denied.

Dated at Milwaukee, Wisconsin, this 30th day of September, 2010.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE